SYLVESTER SMITH, Administrator of the goods and estate of CHARLES TRYON, jun. deceased, *against* EBENEZER GILBERT.

WRIT of error.

This was an action of book debt, brought by *Tryon*, the intestate, *against Gilbert.*

The court referred the cause to auditors; before whom the plaintiff exhibited the following account.

Upon the capture of a vessel, the duties of the master, as such, cease, and he is no longer entitled to *wages;* but a new duty, by implication of law, devolves upon him, as *agent* for the owners, which he is bound to exercise with sound discretion, and for which he is entitled to a *quantum meruit.*

" Dr. *Eben. Gilbert* (physician) to *Ch. Tryon,* jun. Cr.
" 1805,
" *July* 13th.    To my wages, as master of the schooner
                *Peggy*, from 13th of *July* to 18th of *December*, 5 mo. 5 days, at 36 dollars *per*
                month,                          $186 00

                " Supra Cr.
" By my first month's pay,        $ 36 00
                                    ‾‾‾‾‾‾‾
                " Balance due,    $150 00"

It was proved, and admitted, that *Gilbert* was owner of the schooner *Peggy ;* that on the 13th of *July*, 1805, *Tryon* entered on board, on an agreement to go to *Cape Ann's*, in *Martinique*, to deliver the cargo there, and thence to return to *Connecticut ;* that he arrived at *Cape Ann's*, and there delivered the cargo, on the 6th of

*September*, 1805; that on his return voyage, he was captured by an *English* cruiser, on the 29th of *September*, and carried into *St. Kitts*, where he arrived on the 1st of *October*; that on the 6th of *October*, he went to *Antigua*, where the schooner and cargo were libelled before a court of vice-admiralty, and proceeded against in such a manner, that, on the 12th, they were condemned as lawful prize, under the pretext of being enemy's property, and of having gone to *Martinique*, then claimed to be a besieged port; that he remained at *Antigua* until the 19th of *November*, claiming the property, and endeavouring to prevent a condemnation; that he went thence to *St. Kitts*, where he arrived on the 27th of *November*, and thence sailed for *New London*, where he arrived on the 18th of *December*.

The objection to the plaintiff's account was, that he, as master, was not entitled to wages after the capture; but that it was his duty to do what he did for the preservation and restitution of the vessel and cargo, without any right to compensation in the event of condemnation. The auditors recognised this objection as a valid one, and decided accordingly. To the acceptance of their report the plaintiff remonstrated, on the ground that they had mistaken the law. The superior court accepted the report. *Tryon* having deceased, *Smith*, his administrator, brought this writ of error.

*Daggett* and *Staples*, in support of the judgment, contended, that the master and mariners, in case of capture, are entitled to no wages, unless the vessel be restored, and freight earned. They cited *Abbott*, 370. *Molloy*, lib. 2. c. 3. s. 7. 10. *The Friends*, 4 *Rob.* 143. *Beale* v. *Thompson*, 4 *East*, 546.

*Hosmer*, for the plaintiff in error, admitted, that according to the law-merchant, the master, by capture, forfeits his wages arising from the shipping-bill, or ex-

press contract; but contended that, as agent, with im- June, 1809.
plied authority, he is entitled to a *quantum meruit* for SMITH
his services after capture.

v.

GILBERT.

BY THE COURT. It is a settled principle, that the
wages of the master and mariners, as such, are forfeit-
ed, or lost, with the destruction or loss of the ship and
cargo. Yet, upon the capture of a ship, though the
duties of the master, as such, cease, the property be-
ing taken forcibly from him, a new duty is devolved up-
on him as agent for the owners; a duty which, with
sound discretion, he is bound to perform, so long as
there is a reasonable prospect of success.

This agency is not in the nature of a voluntary cour-
tesy. It is a duty the law imposes on him, in the ab-
sence of the owners; and the policy which makes wa-
ges depend on the earnings of the ship to secure the
exertions of the mariners for her safety, does not extend
to such agency after capture. It is for the interest of
owners that such agents should be faithful. To make
them so, sound policy dictates a reward for their ser-
vices; and though precedents of adjudged cases in point
are not found, we are of opinion, that a master acting
faithfully in such new capacity of agent, is entitled to a
reasonable compensation for such services; and that the
superior court, in accepting the report of auditors in
this case, professedly made on the principle that no
compensation could by law be allowed for such services,
erred and mistook the law; and that the judgment
ought to be reversed.

Judgment reversed.